OPINION JUDGMENT ENTRY
{¶ 1} Appellant Melinda Lyons ("mother") appeals two December 9, 2003 Entries entered by the Fairfield County Court of Common Pleas, Juvenile Division, which terminated her parental rights, responsibilities, and obligations with respect to her two minor daughters, and which granted permanent custody of the children to appellee Fairfield County Children's Services ("Department").[1]
 STATEMENT OF THE CASE AND FACTS
{¶ 2} On March 8, 2002, the Fairfield County Court of Common Pleas, Juvenile Division, issued an ex parte order, placing Hannah Lyons (DOB 6/17/00), and Naomi Lyons (DOB 11/19/01) in the emergency custody of the Department. On the same date, the Department filed a complaint, alleging the girls were dependent and seeking temporary custody of the children. Thereafter, on March 11, 2002, the trial court granted temporary custody of the children to the Department.
{¶ 3} The Department filed a case plan with the goal of reunification of the children with mother. On May 23, 2002, and June 5, 2002, the trial court conducted an adjudicatory hearing. Via Entry June 24, 2002, the trial court found the children to be dependent and continued temporary custody with the Department. The trial court conducted six reviews of the case between October 1, 2002, and June 24, 2003. On February 28, 2003, the Department filed a motion for permanent custody. The trial court conducted a hearing on the motion on August 12, 2003, November 4, 2003, and November 6, 2003. The following evidence was adduced at the hearing.
{¶ 4} Melanie Hinze, an ongoing case worker with the Department, testified she had been involved in the case since February, 2002. At that time, mother was working with the Department on a voluntary basis. Hinze discussed the aspects of mother's case plan. Hinze stated mother provided no input with respect to the case plan and refused to sign the case plan. Although mother initially sought the assistance of programs such as Help Me Grow, over the course of the proceedings, she became resistant to working with the various agencies. The Department's major concern regarding the girls was mother's failure to provide adequate supervision, failure to keep the home free of physical hazards, and failure to protect the children. Another concern was the history of assaultive behavior in the home and mother's recognition of the problems in the family. The third concern was mother's intellectual and psychological impairment. The fourth concern was mother's parenting skills in response to the children's behaviors.
{¶ 5} With respect to the first concern, Hinze gave examples of mother's leaving Hannah alone in a room which contained potential physical hazards, such as hanging cords and exposed wires. Mother also allowed a boyfriend, whom she admitted has mental health issues, to supervise the children. Hinze noted mother has mental health issues and has a difficult time making decision which would protect the children. Hinze stated mother had tried to make improvements to insure her home was free from potential hazards, however, the concerns needed to be repeatedly addressed. Hinze recalled during a home visit with Hannah, in November, 2002, mother needed emergency surgery. Mother left Hannah with inappropriate supervision and refused to disclose Hannah's whereabouts to the Department. Mother has limited coping skills to deal with day to day stress, becoming easily frustrated and quickly defensive. Mother has allowed individuals with mental health issues to live with her and supervise the children.
{¶ 6} Mother was inconsistent in her attendance at parenting classes. Mother was also inconsistent with her individual counseling. Between September, 2001, and November 4, 2003, mother attended 33 counseling secessions at Mid-Ohio Psychological Services. During this time frame, mother cancelled 29 appointments and no showed or missed 16 other appointments. On April 23, 2003, mother terminated her individual counseling, after deciding she did not need psychiatric care and her primary care physician could control her medication. Mother lost her medical card when she accepted the spousal allowance from father's social security; therefore, she could no longer attend counseling. Mother was fully aware she would lose her eligibility for a medical card if she accepted father's spousal allowance.
{¶ 7} Hinze further testified mother failed to intellectually stimulate the children. As a result, Hannah experienced speech delays, while Naomi lacked bonding and attachment with mother. Mother had several psychiatric admissions and has a history of child abuse and neglect. During one court proceeding, mother threatened to kill the judge. While her case manager was attempting to take her to emergency services to be assessed, mother jumped out of the moving vehicle and fled. Mother's primary care physician convinced her to go to the hospital under an admission of dehydration. Upon discharge, mother's physician convinced her to meet with the court appointed psychiatrist. Mother commenced a psychological evaluation by Dr. Bradley Hedges, but failed to arrive for the follow-up appointment.
{¶ 8} Melinda Winegardner, the parenting educator at the Department, testified she began working with mother in March, 2002. At that time, the major issues were the effects of domestic violence and emotional maltreatment on the children; and mother's responsibility to protect her children from potentially harmful adult, provide proper nutrition to the children, and learn how to deal with Hannah's tantrums. Winegardner testified mother attended the 1-2-3-4 Parenting Class, a class which focuses on parenting children ages 1 through 4. The class works on developmental issues, learning to create routines and schedules, learning to avoid trouble and administer proper discipline, and learning to take care of oneself as a parent. Although Winegardner received a referral to work with mother individually, mother did not want to do so, telling Winegardner she did not need work on parenting and she could probably teach the parenting class herself. Mother agreed to meet with Winegardner on April 18, 2002, but did not appear for the appointment. Winegardner contacted mother, who told her she had forgotten about the appointment and asked if Winegardner could pick her up. Winegardner did so.
{¶ 9} Winegardner and mother reviewed the concerns on the parenting referral and talked about concerns on which mother might want to work. Winegardner noted mother did not have a supportive family system. At a home visit, mother solicited advise from Winegardner on safety issues. Winegardner attended mother's visitation with the girls. She noted mother had a difficult time feeding both children. Winegardner testified mother attended a church, in which the members believed in the importance of removing demons from people. The members would make a person cough to the point of vomiting. Mother found this to be inappropriate and embarrassing, and after counseling with a friend, determined burping would be sufficient enough to remove demons. Winegardner noted when mother was having problems in her personal relationships, she became focused on those issues and had a greater difficulty parenting at those time. She also testified she did not see adequate progress during the course of her involvement with mother. Although mother learned the skills, she was unable to put them into practice.
{¶ 10} Via Entries filed December 9, 2003, the trial court terminated mother's parental rights. The trial court ordered the children be placed in the permanent custody of the Department. The trial court issued findings of fact and conclusions of law.
{¶ 11} It is from these entries mother appeals, raising the following assignments of error:
{¶ 12} "I. The trial court erred when it granted the motion of fairfield county children's services for permanent custody of the minor children hannah lyons and naomi lyons as the state of ohio failed to establish the jurisdictional prerequisites for a grant of permanent custody as set forth in R.C. 2151.414.
{¶ 13} "II. The trial court committed plain error when it granted the motion of fairfield county children's in the absence of clear and convincing evidence of the facts required by R.C.2151.414.
{¶ 14} This appeal is expedited and is being considered pursuant to App. R. 11.2.
 I, II
{¶ 15} Because mother's assignments of error are interrelated, we shall address said assignments together. Mother submits the trial court's findings in support of its decision to grant permanent custody of the children to the Department, and findings with respect to the best interest of the children were against the manifest weight of the evidence.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279.
{¶ 16} R.C. 2151.414(B)(1) provides:
{¶ 17} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
{¶ 18} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
{¶ 19} "(b) The child is abandoned.
{¶ 20} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
{¶ 21} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
In determining the best interest of the children, R.C.2151.414(D) provides: the court must consider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child and his parents, siblings, relatives, foster parents and out-of-home providers, any other person who may significantly effect the child;
{¶ 22} "(2) The wishes of the child, as expressed directly or indirectly by the child or through his guardian ad litem, with due regard for the maturity of the child;
{¶ 23} "(3) The custodial history of the child;
{¶ 24} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the Agency."
{¶ 25} The testimony adduced at the final hearing in this matter established, despite extensive efforts on the part of the Department, mother failed to rectify the situations which caused the initial removal of the children from her home. Mother was the victim of domestic violence at the hands of father. Although father was incarcerated through much of these proceedings, mother associated herself with other questionable individuals. At the time of the final hearing, mother was pregnant by an individual named John Smith. Mother admitted Smith is a schizophrenic, who does not regularly take his medication, and is not good with small children. Additionally, mother has involved herself with a church whose members expect her to cough until she vomits to rid herself of demons. With regard to the Department's concerns over safety issues in the home, mother made attempts to comply. However, many of the issues had to be readdressed on more than one occasion, and when questioned about issues which were not addressed, mother remarked she would take care of those things when the children were returned to her. The Department also had concerns regarding mother's ability to deal with both children at the same time. Despite Melanie Winegardner's constant guidance and encouragement, mother was unable or unwilling to address the needs of both children at the same time. Finally, mother refused to address her own mental health issues. She would only see her primary care physician for psychiatric medication and never consistently took the medication or attended counseling.
{¶ 26} Based upon the foregoing, we find the Department presented clear and convincing evidence it was in the best interest of the children to be placed in the permanent custody of the Department. We further find the trial court's findings were supported by competent, credible evidence and were not against the manifest weight of the evidence.
{¶ 27} Mother's first and second assignments of error are overruled.
{¶ 28} The judgments of the Fairfield County Court of Common Pleas, Juvenile Division, are affirmed.
Hoffman, J. and Gwin, P.J. concur.
Edwards, J. concurs separately.
[1] Terry Lyons, father of the children, is not a party to this appeal.